# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH W. LUBINSKI, | : | CIVIL NO: 1:20-CV-01485 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJIKAZI,[1] | : | |
| Acting Commissioner of Social | : | |
| Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

### I.   Introduction.

This is a social security action brought under 42 U.S.C. §§ 405(g) and

1383(c)(3).  Plaintiff Joseph W. Lubinski seeks judicial review of the final decision

of the Commissioner of Social Security ("Commissioner") denying his claim for

disability insurance benefits under Title II of the Social Security Act and his claim

for supplemental security income under Title XVI of the Social Security Act.  We

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set

forth below, we will vacate the ALJ's decision and remand the case to the

Commissioner for further proceedings.

## II.    Background and Procedural History.

We refer to the administrative transcript provided by the Commissioner. *See*

*docs. 15-1* to *15-12*.[2]  On November 21, 2016, Lubinski filed a Title II application

for a period of disability and disability insurance benefits. *Admin Tr.* at 10.

Lubinski also protectively filed[3] a Title XVI application for supplemental security

income ("SSI") on November 17, 2016. *Id.*  In both applications, Lubinski alleged

that his disability began on May 8, 2015. *Id.*  After his claims were initially denied,

Lubinski requested a hearing. *Id.*  He appeared and testified at an administrative

hearing on January 3, 2019, in Wilkes-Barre, Pennsylvania. *Id.*  At the

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Lubinski's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16- CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*  Here, November 17, 2016, is the date identified by the ALJ as the date that Lubinski protectively filed his application for SSI. *Admin. Tr.* at 10.

administrative hearing, an impartial vocational expert, Nadine Henzes, also appeared and testified without counsel. *Id.*

On March 26, 2019, Administrative Law Judge Jarrod Tranguch ("ALJ") determined that Lubinski had not been disabled within the meaning of the Social Security Act from May 8, 2015, through the date of the decision. *Id.* at 29.  The ALJ denied benefits accordingly. *Id.*  Lubinski appealed the ALJ's decision to the Appeals Council, which denied his request for review on June 22, 2020. *Id.* at 1. Thus, the ALJ's March 26, 2019, decision is the final decision of the Commissioner and subject to judicial review by this court.

Lubinski subsequently filed this civil action in the United States District Court for the Middle District of Pennsylvania on August 19, 2020. *See doc. 1.*  He alleges that he is "disabled and the Conclusions and Findings of Fact of the defendant are not supported by substantial evidence and are contrary to law and regulation." *Id.* at ¶ 5.  Lubinski asks that this Court "reverse the decision of the defendant; and find that plaintiff is entitled to disability benefits under the provisions of the Social Security Act," or alternatively to "reverse the decision of the defendant and remand the case, with instructions, for a further hearing; and further provide such other relief, including an award of attorney's fees under the Equal Access to Justice Act[.]" *Id.* at 2.

3

The Commissioner filed an answer and a certified transcript of the administrative proceedings that occurred before the Social Security Administration. *Docs. 14, 15.*  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 17.*  The parties have filed briefs (*see docs. 29, 30, 33*), and this matter is ripe for decision.

### III.    Legal Standards.

#### A. Substantial Evidence Review—The Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

4

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Lubinski is disabled, but whether substantial evidence supports the Commissioner's findings that he is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must generally be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)

6

(quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20
C.F.R. §§ 404.1520(a)(1), 416.945(a)(1).  In making this assessment, the ALJ
considers all the claimant's medically determinable impairments, including any
non-severe impairment identified by the ALJ at step two of his or her analysis. 20
C.F.R. §§ 404.1520(a)(1), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the
sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d
Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner,
who must . . . show there are other jobs existing in significant numbers in the
national economy which the claimant can perform, consistent with her medical
impairments, age, education, past work experience, and residual functional
capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive
requisites.  Most significantly, the ALJ must provide "a clear and satisfactory
explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642
F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which
evidence he has rejected and which he is relying on as the basis for his finding."
*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).  The
"ALJ may not reject pertinent or probative evidence without explanation." *Johnson
v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the

reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.    The ALJ's Decision Denying Lubinski's Claims.

On March 26, 2019, the ALJ denied Lubinski's claims for benefits. *Admin Tr.* at 29.  The ALJ initially found that Lubinski met the insured status requirements of the Social Security Act through September 30, 2018. *Id.* at 12.  At step one of the sequential-evaluation process, the ALJ found that Lubinski had not engaged in substantial gainful activity since May 8, 2015, the alleged onset date. *Id.* at 13.

At step two of the sequential-evaluation process, the ALJ found that Lubinski had the following severe impairments: borderline intellectual functioning, attention deficit disorder, schizoaffective disorder, depression, anxiety, unspecified psychosis, degenerative disc disease of the lumbar spine, degenerative joint disease of the left shoulder, a history of a clavicle fracture, and mild osteoarthritis of the right shoulder acriomioclavicular joint. *Id.*  He found these impairments to significantly limit the ability to "perform basic work activities as required by SSR 85-28." *Id.*

Next, at step three of the sequential-evaluation process, the ALJ found that Lubinski did not have an impairment or combination of impairments that met or

medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1. *Id.* at 15.

The ALJ then determined that Lubinski had the RFC to perform light work

as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), save for some exceptions.[4]

*Id.* at 19.  Specifically, the ALJ found that Lubinski could:

> [o]ccasionally push and/or pull with the upper and lower
> extremities such as in the operation of levers, hand controls,
> pedals, and foot controls.  He can occasionally reach overhead.
> The claimant can occasionally balance, stoop, kneel, crouch,
> and use ramps and climb stairs, but should avoid crawling and
> climbing ladders, ropes, or scaffolds.  He can tolerate
> occasional exposure to wet or slippery conditions, vibrations,
> and concentrated fumes, strong odors, concentrated dust and
> gases, and work environments with poor ventilation.  He should
> avoid workplace hazards such as dangerous moving machinery
> or unprotected heights.  The claimant can perform unskilled
> work involving only simple, routine tasks performed in a low
> stress environment defined as one with occasional simple
> decision making and occasional changes in work duties or work
> setting.  He can have occasional interaction with coworkers and
> rare or incidental interaction or contact with customers or
> members of the general public.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

*Id.*

At step four of the sequential-evaluation process, the ALJ determined that Lubinksi was unable to perform any of his past relevant work, these being "a floor cleaner, auto parts delivery person, forklift operator, and construction worker I." *Id.* at 27.

Further, the ALJ found that on the alleged disability onset date Lubinski was a younger individual, age 18–49, because he was born on December 19, 1965. *Id.* Lubinski subsequently changed age category to closely approaching advanced age. *Id.* Lubinski also was found to have at least a high school education and to be able to communicate in English. *Id.* The ALJ further found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. *Id.*

Finally, at step five of the sequential-evaluation process, the ALJ determined that after considering "the claimant's age, education, work experience, and residual functional capacity," there were jobs that existed in significant numbers in the national economy he was capable of performing. *Id.* Some of these were as a "folder," an "office helper," or a "tagger." *Id.* Additionally, the ALJ found that the vocational expert's testimony was consistent with information contained in the Directory of Occupational Titles. *Id.* at 28.

In sum, the ALJ concluded that Lubinski was not disabled from May 8, 2015, through the date of his decision. *Id.*  Thus, the ALJ denied him benefits. *Id.* at 29.

## V.   Discussion.

Lubinski presents five issues for review in this matter.  First, he alleges that the ALJ erred in failing to consider all of the findings of the treating neuropsychologist and properly evaluate the state agency psychologist's opinion. *Doc. 29* at 8.  Second, Lubinski alleges that "[t]he ALJ failed to account for the plaintiff's panic disorder as either a severe or non-severe medical limitation." *Id.* Third, Lubinski alleges the ALJ failed to properly evaluate his proffered third-party statements. *Id.*  Fourth, Lubinski alleges that "[t]he ALJ erred in his evaluation of the subjective evidence resulting in an erroneous finding that the plaintiff is capable of light work." *Id.*  Fifth, Lubinski presents a constitutional argument that the appointment of the Commissioner of Social Security violates the separation of powers. *Id.* at 8–9.  We will begin by discussing his claim alleging error in the ALJ's handling of his proffered third-party statements.

### A. The ALJ erred in rejecting Lubinski's proffered third-party statements because they were not made by medically trained persons.

Lubinski argues that the ALJ committed a reversible error when he rejected third-party statements on the basis that they were not made by medically trained persons. *Doc. 29* at 18–19.

The ALJ rejected the report of Lubinski's friend Elaine Isaac ("Isaac"), who submitted a third-party function report. *Admin. Tr.* at 242–52.  In her report, Isaac stated that Lubinski had suffered several head injuries, and that he "forgets a lot, [sic] cannot complete a sentence when in a conversation." *Id.* at 242.  Isaac also stated in her report that during waking hours, Lubinski "sits in a chair with a TV . . . smokes and [is] just depressed." *Id.* at 243.  Isaac further believed that he had "pain's [sic] in his head, cannot get proper rest." *Id.*  Isaac also reported Lubinski had no hobbies aside from watching TV and she stated he "just sits he is very depressed." *Id.* at 246.  When asked to check any boxes corresponding to Lubinski's illnesses, injuries, or conditions, Isaac marked that he had difficulties completing tasks, concentrating, understanding, and following instructions. *Id.* at 247.  When prompted to describe how Lubinski handles stress, she reported that he handles stress very badly, and in particular that "SSA is stressing Joe out bad." *Id.* at 248.  In her closing remarks, Isaac mentioned that Lubinski is a kind but sad person, due in part to his inability to work, his various physical and mental conditions, and because he had been seeking help for some time. *Id.* at 249.  She

also noted that as a former business owner, she would not have hired Lubinski for a position at her business. *Id.*

Further, the ALJ rejected the third-party observations of an agency field office employee. *Id.* at 222–23.  The agency employee made his observations when Lubinski filed his initial application for SSI. *Id.* at 220.  More specifically, the employee made the observations in response to a form entitled "DISABILITY REPORT – FIELD OFFICE – Form SSA-3367," which SSA staff is required to fill out when interacting with the claimant under the subheading "9. Observations/Perceptions." *Id.*  The interview was conducted face-to-face. *Id.* at 223.  In response to the prompt to "describe the claimant's behavior, appearance, grooming, degree of limitations, etc.," the agency employee responded that "[Lubinski] had some difficulty remembering dates and events, and answering some questions." *Id.*  Further, Lubinski "[s]eemed to have difficulty thinking and keeping train of thought." *Id.*  The employee also observed that Lubinski "[a]nswered most questions himself but needed help from [a] friend who was with him to answer some questions." *Id.*  The employee "[d]id not notice any physical issues during [the] interview." *Id.*

In his decision, the ALJ found that:

> The claimant's friend, Elaine Isaac, submitted a third party function report that describes the claimant's medical conditions and functional limitations.  She said that the claimant has difficulty concentrating, remembering, completing

> tasks, and performing physical activity because of pain.  She is
> not medically trained to make exacting observations as to the
> date, frequency types, and degrees of medical signs and
> symptoms, or the frequency or intensity of unusual moods or
> mannerisms.  Therefore, significant weight cannot be given to
> Ms. Isaac's statements because they are not consistent with the
> preponderance of the opinions and observations by the medical
> doctors in this case.

*Admin. Tr.* at 26 (citation to the record omitted).  Similarly, regarding the

observations of the agency employee, the ALJ found that:

> Of note, the Social Security field office employee who
> took the claimant's initial application noted that the claimant
> had some difficulty remembering dates and events, thinking and
> keeping train of thought, and need[ed] help from a friend to
> answer some questions.  A field office employee is not
> medically trained to make exacting observations as to the date,
> frequency types, and degrees of medical signs and symptoms,
> or the frequency or intensity of unusual moods or mannerisms.
> Therefore, the undersigned has considered this statement only
> to the extent it is consistent with the observations by the
> medical doctors in this case.

*Id.* at 26–27 (citation to the record omitted).  Thus, the ALJ rejected the third-party

reports of both Isaac and the agency employee on the basis that neither was

medically trained.

An ALJ has a duty to hear and evaluate all relevant evidence in order to

determine whether an applicant is entitled to disability benefits. *Cotter v. Harris*,

642 F.2d 700, 704 (3d Cir. 1981) (footnote omitted).  The "ALJ may not reject

pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc.*

14

*Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot

tell if significant probative evidence was not credited or simply ignored.'" *Burnett*

*v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Cotter*,

642 F.2d at 705).  A "reviewing court may remand a case to the [Commissioner]

for good cause, 'where relevant, probative and available evidence was not

explicitly weighed in arriving at a decision on the plaintiff's claim for disability

benefits.'" *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting

*Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).

Further, "[i]t is well-established that observations of third-party lay

witnesses are valid evidence for an ALJ to consider in assessing a disability

claim." *Dougherty v. Saul*, No. 3:20-CV-00504, 2021 WL 3077504, at *6 (M.D.

Pa. July 21, 2021).  SSR 06–03p provides that an ALJ may consider "'other

sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity

of the individual's impairment(s) and how it affects the individual's ability to

function." *Titles II & XVI: Considering Opinions & Other Evidence from Sources*

*Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering*

*Decisions on Disability by Other Governmental & Nongovernmental Agencies*,

SSR 06-03P (S.S.A.), 2006 WL 2329939, at *2 (Aug. 9, 2006).[5]  These sources

---

[5] SSR 06-03p was rescinded for claims filed after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5845 (Jan. 18, 2017) ("We will also rescind the following SSRs that are

include nonexhaustively "[s]pouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers . . . [I]nformation from such "other sources" may be based on special knowledge of the individual[.]" *Id.* When considering evidence from these "non-medical sources," who see the individuals in a non-professional capacity, it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id.*

The language used by the ALJ here is similar to the language used by the ALJs in *Dougherty* and *Quinn*. In *Dougherty*, the ALJ found that:

> Although [Mr. Dougherty] is in the unique position to observe many of [Dougherty's] daily activities, the report provider is not a trained medical expert who has been schooled in making appropriate observation of signs and symptomatology, and, who has been taught to make dispassionate assessments. Accordingly, [Mr. Dougherty's] opinion has been considered and given only moderate weight. Nevertheless, to the extent that the observations opined herein are supported by the medical records, this report has been considered in the formulation of this decision.

*Dougherty*, 2021 WL 3077504, at *5.

---

otherwise inconsistent with or duplicative of these final rules: . . . SSR 06-03p: *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies.*"). Here, however, Lubinski's claims were filed before that date, so the rule was still in effect.

Rejecting the ALJ's analysis, the District Court found that "Mr. Dougherty's opinion was not intended to serve as an opinion from 'a trained medical expert who has been schooled in making appropriate observation[s] of signs and symptomatology.'" *Id.* at *6. The court instead found that the third-party statement was intended to serve as a "personal observation of his wife." *Id.* Thus, the court found that it was improper for the ALJ to "discount Mr. Dougherty's non-medical opinion on grounds that he is not a medical expert." *Id.*

Similarly in *Quinn*, the ALJ found that the plaintiff's spouse's third-party statement was at most "partially persuasive," given that:

> [T]he record does not indicate that Ms. Quinn is medically trained to make exacting observations as to the claimant's alleged impairments or limitations. Furthermore, Ms. Quinn cannot be considered a disinterested third party witness whose statements would not tend to be influenced by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges.

*Quinn v. Kizakazi*, No. 3:20-CV-01698, 2022 WL 178824, at *6 (M.D. Pa. Jan. 18, 2022). But as the court found in that case, "Mrs. Quinn's statements were not intended to serve as a medical opinion and were offered to show her personal observations of her husband." *Id.* at 7. The ALJ further offered "no specific reference . . . to any opinion or observation by a medical doctor" when evaluating Mrs. Quinn's opinion. *Id.* Finally, the ALJ's rationale for finding Mrs. Quinn's statement "partially persuasive because she is 'not medically trained' [was]

17

misplaced." *Id.*   Thus, as the court concluded, the ALJ was in error because finding the third-party's statement "less than persuasive because she is not medically trained, or a disinterested party is improper." *Id.*

Also in *Quinn*, the court found that SSA personnel made findings consistent with the claimant's spouse. *Id.* at *7.  In that case, field office staff noticed that the claimant was uncomfortable during his interview. *Id.*  "To the extent that the observations of trained [personnel] were consistent with the primary statement from [claimant's spouse]," the spouse's statement should not have been considered merely "partially persuasive." *Id.*

Consistent with *Dougherty*, *Quinn*, and SSR 16-3p, Isaac's opinion was not intended to serve as an opinion from someone who "is . . . medically trained to make exacting observations[.]" *Admin. Tr.* at 27; *see also Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p (S.S.A.), 2016 WL 1119029 (Mar. 16, 2016).[6]  Rather, Isaac's opinion was intended to serve as a personal observation of her close friend.  Further, Isaac's report was consistent

---

[6] SSR 16-3p superseded SSR 96-7p on March 16, 2016.  The ruling was subsequently updated with revised citations to the new regulations on October 25, 2017. *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p (S.S.A.), 2017 WL 5180304, at *1 (Oct. 25, 2017) ("We are republishing SSR 16-3p, a ruling that rescinded and superseded SSR 96-7p, with a revision detailing how we apply the SSR as it relates to the applicable date . . . [w]e also updated citations to reflect the revised regulations that became effective on March 27, 2017.").  Because Lubinski's claims were filed in November of 2016, SSR 16-3p was in effect.

with the observations of the field office employee.  Thus, it was improper for the

ALJ to discount Isaac's third-party non-medical opinion on grounds that she was

not a medical expert. *See Richards v. Colvin*, 223 F. Supp. 3d 296, 306 (M.D. Pa.

2016) (holding that the ALJ was in error for discounting lay witnesses' report for

the principal reason that they "cannot be considered disinterested witnesses").  We

must next turn to the Commissioner's argument that the ALJ's error was harmless.

     "[T]he burden of showing that an error is harmful normally falls upon the

party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409

(2009).  Harmless error is one that would not affect the outcome of the case.

*Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).  An error in rejecting a

third-party report may be considered harmless if the ALJ rejected the report for

additional reasons such as the report's inconsistency with the record as a whole.

*Morton v. Saul*, No. CV 19-3650, 2020 WL 2847930, at *6 (E.D. Pa. June 2, 2020)

("[I]n this case the ALJ's error was not material, because he also rejected the report

as inconsistent with the record as a whole.").  Here, however, the ALJ did not

consider the consistency of the reports with the record as a whole.  Rather, as to

Isaac, after observing that she is not medically trained, he merely concluded that he

therefore could not give significant weight to her statements because they are not

consistent "with the preponderance of the opinions and observations by the

medical doctors in this case." *Admin. Tr.* at 26.  He does not explain, however,

with what opinions and observations of the medical doctors Isaac's statements were not consistent.  He further considered the field office employee's report "only to the extent it is consistent with the observations by the medical doctors in this case." *Id.* at 27.  Similarly, the ALJ did not explain how the report was or was not consistent with specific opinions or observations of the medical doctors in this case.  We thus cannot find that the ALJ's error was harmless.

As a remedy, Lubinski asks that "the decision of the defendant Commissioner of Social Security should be vacated" and that the case "should be remanded to the Commissioner for proper consideration of the evidence before a new Administrative Law Judge." *Doc. 29* at 32.  We agree.

Courts can remand cases to obtain "a more specific statement of why the lay testimony was rejected and in what respect it was inconsistent" with the evidence as a whole. *Richards*, 223 F. Supp. 3d at 306.  Remand is necessary in this case for further consideration of the third-party reports and in what respects they are or are not consistent with the rest of the medical record. *See id.* ("The Court simply cannot evaluate the propriety of the ALJ's assertion in this regard because the ALJ does not identify what opinion or observations by medical doctors conflict with the statements furnished by Plaintiff's lay witnesses.").

**B. Lubinski's Remaining Claims of Error and Request for Remand.**

Lubinski presents several other claims of error in his brief.  Because we

conclude that the Commissioner's decision must be vacated and the case remanded

based on the ALJ's handling of Isaac's and the field office employee's third-party

statements, we will not address Lubinski's remaining claims of error. *See Burns v.*

*Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016) (declining to address other

allegations of error because "[a] remand may produce different results on these

claims, making discussion of them moot").


**VI.    Conclusion.**

For the foregoing reasons, the decision of the Commissioner will be vacated,

and the case will be remanded to the Commissioner of Social Security for further

proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  An appropriate order

follows.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge
